VICTOR JACOBELLIS
CA Bar No. 278988
vjacobellis@merlinlawgroup.com
DANIEL J. VEROFF
CA Bar No. 291492
dveroff@merlinlawgroup.com
**MERLIN LAW GROUP, P.A.**
601 Montgomery Street, Suite 1925
San Francisco, CA 94111
Telephone: (415) 851-2300
Facsimile: (415) 960-3882

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALICIA LOPEZ, dba, Plaza San Miguel, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN FIRE AND CASUALTY COMPANY, an Ohio corporation; Pennsylvania corporation; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 1:20-cv-01418-JLT-SAB<br><br>**DECLARATION OF TERRY D. MCNEIL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Filed concurrently with Plaintiff's Opposition to Defendant's Motion for Summary Judgment; Plaintiff's Separate Statement of Undisputed Facts in Support of Her Opposition to Defendant's Motion for Summary Judgment; Declaration of Victor Jacobellis; Declaration of Rolf Eidbo]<br><br>Date: July 12, 2022<br>Time: 9:00 AM<br>Location: Courtroom 4<br>Judge: Hon. Jennifer L. Thurston<br><br>Action Filed: October 2, 2020 |

1

**DECLARATION OF TERRY D. MCNEIL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I, TERRY MCNEIL, declare as follows:

1.    I have personal knowledge of the matters set forth herein and if called, could competently testify thereto. I make this declaration in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

2.    I was retained by Plaintiff as an expert regarding Defendant American and Casualty Company's conduct.

3.    My expert report, which includes my CV and qualifications, is attached as Exhibit 1 and is hereby incorporated into this declaration.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this 22 day of June, 2022 in Folsom, California.

_____
TERRY D. MCNEIL

DECLARATION OF TERRY D. MCNEIL IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 1

# REPORT OF
# FINDINGS AND OPINIONS

In the Matter of

## Alicia Lopez dba Plaza San Miguel, an individual
*Plaintiff*

v.

## American Fire and Casualty Company, an Ohio Corporation, and Does 1-20, inclusive.
*Defendant*

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF CALIFORNIA

Case No. 1:20-cv-01418-NONE-SAB

Prepared for
Victor Jacobellis
Dan J. Veroff
Courtney B. Abrams
Merlin Law Group, P.A.
601 Montgomery Street, Suite 1925
San Francisco, CA 94111

Prepared by
### *Terry D. McNeil*
Insurance Expert Witness

terry@tdmins.com 916 983 2561 www.tdmins.com
110 Blue Ravine Rd. Suite 105, Folsom, CA 95630

LOPEZ 015799

**February 18, 2022**

## INTRODUCTION

My name is Terry D. McNeil, and my place of business is 110 Blue Ravine Rd., Suite 105, Folsom, CA 95630. Plaintiff Alicia Lopez DBA Plaza de Mexico, an individual (INSD) has retained me as an expert witness in this case.

My Curriculum Vitae is attached as EXHIBIT 1. I have been in the insurance industry for over 45 years. At Sentry Insurance I worked as a Personal Lines underwriter and was promoted to Commercial Lines underwriter. At Michigan Mutual I worked as a Commercial Lines underwriter and was promoted to Regional Underwriting Supervisor where I managed both the Personal Lines and Commercial Lines departments.

In 1977, I accepted a position as Director of Insurance for Spartan Stores, Inc., a food cooperative. I was given authorization to set up a Captive Insurance Company and an Insurance Agency to provide insurance for the grocery store members of Spartan Stores, Inc. I was the VP and Chief Operating Officer for both entities. I was responsible for managing all the operations of the insurance company and the agency, including underwriting, sales, loss control and claims.

In 1986, I accepted a position as VP and Chief Operating Officer at Empire Agency Corporation. This was a subsidiary of Fleming Foods. It operated a Captive Insurance Company and Agency like the Spartan Stores operation. I was responsible for all operations including sales, claims, loss control and underwriting for the Western Region, including managing insurance agencies in nine states.

In 1988, I accepted a position as Director of Insurance for ABM Industries, Inc. I was later promoted to Vice President and Director of Insurance Services. I was responsible for managing a $100 million Corporate Risk Management Department. That included managing a self-administered WC Claim Department and managing a nationwide claims department. I was responsible for managing all tort litigation nationwide for ABM Industries, Inc.

I retired from ABM in 2004. I testified as an expert witness from 2004 to 2006. I worked as both a defense and a plaintiff expert. In 2006, I started an insurance agency and discontinued the expert witness work. I have been running a full-service insurance agency for over 14 years. This provides me with first-hand experience regarding the types of coverage offered by major insurance carriers including Travelers, Hartford, Safeco, Mercury, Kemper, Progressive, Foremost, Stillwater and Met Life. I am also familiar with the products offered by direct writers such as State Farm, Farmers, Allstate, CSAA and many others. I have had first-hand experience in helping our clients handle insurance claims. I have also had numerous conversations with insurance company adjusters. I understand how most insurance companies operate and the standards they follow.

**LOPEZ 015800**

I have been retained as an expert on behalf of a major insurance company. This included the opportunity to review their confidential training guides regarding underwriting, sales, and claims. I am very familiar with the training, standards and procedures used by this and other carriers.

My education and experience qualify me to testify regarding the standard of care for claim handling.

\*\*\*\*\*

Exhibit 1.  Documents Reviewed
Exhibit 2.  Deposition Testimony
Exhibit 3.  Curriculum Vitae

**LOPEZ 015801**

## BACKGROUND

I was retained by the "Plaintiff;" Alicia Lopez, DBA Plaza San Miguel, an individual regarding American Fire and Casualty Company – a stock company (AFCC) Policy Number BKA (18) 55 97 98 42, effective 06/10/2017 to 06/10/2018, on the real property located at 1641-1651 and 1661 Crows Landing Rd., Modesto, CA 95358-5606 and 1647 1/2 Crows Landing Rd., Bldg 2, Modesto, CA 95358-5654 (Property).

I was asked to review the coverage provided under the Policy, and to evaluate the claim handling and the loss settlement. I have been retained at the rate of $300 per hour, plus expenses. I do not charge extra for deposition and/or trial testimony.

The INSD purchased a Comprehensive General Liability (CGL) and Property Insurance policy from AFFC. The Limit of Insurance – Replacement Cost, Agreed Value is $2,383,656 regarding 1641-1651 (Loc 1) and 1661 Crows Landing Rd., Modesto, CA 95358-5606  and the Limit of Insurance Replacement Cost – Agreed Value is $767,090 regarding 1647 1/2 Crows Landing Rd., Bldg. 2, Modesto, CA 95358-5654 (Loc 2). Coverage was written using BUILDING AND PERSONAL PROPERTY COVERAGE FORM CP 00 10 04 02. The policy includes the numerous endorsements including CP 00 30 04 02, CP 04 49 12 05, CP 10 30 04 02, CP 72 97 04 02, CP 88 40 12 12, CP 90 55 12 12, CP 09 58 12 12, and IL 01 02 05.

On December 27, 2017, fire severely damaged the property located at 1641-1651 Crows Landling Rd., Modesto, CA 95358-5606 and 1647 1/2  Crows Land Rd., Modesto, CA 958358-5606.  Approximately half of the building(s) and tenant spaces incurred direct fire damage and all of the tenant spaces incurred significant smoke damage. The entire building(s) was demolished on March 10, 2020.

The claim was reported on a timely basis and accepted by AFCC with no reservation of rights.

## FINDINGS AND OPINIONS

## AFCC FAILED TO CONDUCT A PROMPT AND THOROUGH INVESTIGATION

Standards for Prompt, Fair and Equitable Settlements are outlined in **Cal. Code Regs. tit. 10 § 2695.7.** They represent the minimum standards. The insurer has a duty to conduct and diligently pursue a thorough, fair, and objective investigation. An insurance company must give at least as much consideration to the interests of the insured as it gives to its own interests.[1] The insurer has a duty to provide a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for

---

[1] Judicial Council of California Jury Instructions (2020 edition) 2330 Implied Obligation of Good Faith and Fair dealing explained.

**LOPEZ 015802**

the denial of a claim or for the offer of a compromise settlement.[2] The insurer cannot fail to pay a claim, when liability has become apparent, under one portion of the insurance policy to influence settlements under another portion of the insurance policy coverage.

The Commerical Insurance Claims/ Property Claim Quality standards from Liberty Mutual confirm that AFCC violated its own standard of care. These standards require a coverage analysis to be completed within 14 days. A reservation of rights letter (ROR) must be utilized as appropriate and follow-up letters must include ROR language.[3] This coverage analysis should contain a review of all applicable policy and endorsement language.[4] AFCC failed to meet its own standard of care.

The claim was reported timely and AFCC was granted access to investigate the location(s). There is no indication in the claim file of a failure by the insured to cooperate with AFCC regarding the investigation of this claim. AFCC has a duty to fully inquire into all possible bases that might support the insured's claim. No such investigation was ever conducted. AFCC failed to investigate the actual insurance policy issued regarding these two locations.

On 1/16/2018, AFCC knew that this building was potentially a total loss. Approximately half of the building and tenant spaces incurred direct fire damage requiring them to be rebuilt. The other half had varying degrees of smoke damage. The electrical was on the fire damaged side of the building, requiring it to be either moved or to install a generator.[5] James Preston discussed this case with Underwriting Director Stephan Kearsey, but there is no indication that anyone at AFCC, in either the claim department or the underwriting department, investigated the significance of the Agreed Value clause or any of the following endorsements:  IL 01 02 05 05, CALIFORNIA CHANGES –

---

[2] California Insurance Code ARTICLE 6.5 Unfair Practices. 790.03 (13).

[3] CM000001  Page 1.

[4] CM000020.  Coverage analysis should contain review of all applicable policy and endorsement language related to cause and circumstances of loss, property lost or damaged, etc. (which should be read as a whole). A claims coverage communication should be sent on any claim requiring a Proof of Loss submission. The communication should include confirmation that the following have been reviewed: • Coverages applicable to the loss and the limits that apply; • Deductible amount; and • Verification of the loss payees, mortgagees, and additional insureds.

[5] CF0000306  *"The fire caused direct damage to the wood framed walls, metal siding and roof structure above the origin of the fire. There was ensuing water damage to neighboring units from the fire departments efforts to extinguish the fire which included creating multiple roof penetrations to keep the fire from spreading. In addition,there was smoke damage to all 10 of the tenant spaces with smoke and soot staining to the walls and ceilings."*

CN0000064  *"As the electrical was on the fire damaged side of the building, this will need to either be moved or a generator will need to be obtained to power the other side of the building to allow cleaning of tenant spaces."*

**LOPEZ 015803**

ACTUAL CASH VALUE, CP 90 58 12 12 CALIFORNIA CHANGES – INCREASED COST OF CONSTRUCTION, CP 88 40 12 12 PROPERTY EXTENSION PLUS FOR LESSORS, CP 72 97 04 02 EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT – SPECIAL FORM or CP 04 49 12 05 CALIFORNIA CHANGES – REPLACEMENT COST.

AFCC did no investigation to determine whether or not additional coverage could be available to the insured because of these policy provisions, even though this file was reviewed by senior claim management and by underwriting management.

AFCC knew, or should have known, that there were two locations. The policy clearly shows separate limits for Location 2, 1947 1/2 Crows Landing Rd., Modesto, CA 95358, and the claim file notes that Location 2 was completely destroyed. There is no evidence that AFCC even investigated whether or not there were two locations, until prompted by the Public Adjuster in December 2018, over a year after the date of loss.[6] [7]

AFCC never investigated the significance of the fact that both endorsement CP 88 40 12 12 PROPERTY EXTENSION PLUS FOR LESSORS and CP 72 97 04 02, 'EQUIPMENT BREAKDOWN ENHANCEMENT ENDORSEMENT – SPECIAL FORM provide a $200,000 limit per location. Eventually, AFCC acknowledged that there were two separate locations, and it changed the reserves to reflect a separate estimate for each location. However, it never investigated whether or not the appropriate limits applied separately to each location.[8]

AFCC completed a Serious Case Notice (SCN) but failed to conduct a proper investigation before completing this form. The SCN is required to include a detailed description of the event, risk discription and coverage. The SCN was completed on January 16, 2018.[9] It was approved by management on January 24, 2018.[10]

---

[6] CN0000030 Brett Day  12/31/2018  *"It was my understanding that there are two structures on the property. I have attached a Satelite View of the property, which shows two building. The first is an "H" shaped building building along Crows Landing Rd. The second building is a 40' x 150' metal building at the rear of the parcel. The PA is stating that the middle of the H building is the second building isured at $767,090 and the balance of the front building is location 1."*

[7] CN000027  Janine Mills (01/04/2019) *"PA brought concern to our attention re: policy as written, and that the 2 locations listed on policy are actually one building (loss building).  Brett is checking with underwriting."*

[8] CN0000064 *"Insured has owned building for approx. 40 years, making additions and modifications over that time."*

[9] CF000078

[10] CF000075 EXAMINING REVIEW  *"SCN has been reviewed and approved. Will proceed to distribute SCN. -James Preston (01/23/2018 10:21 AM)"*

LOPEZ 015804

The SCN failed to meet the standard of care.[11] It should be noted that this form was completed by Brett Day, the Case Handler, James Preston, the Manager/Approver and Koreen Beltran, the Underwriter. Yet this only lists one limit of liability for one location, when the policy clearly shows two locations and as pointed out above, reserves in the claim file later verify two locations. The SCN noted that the fire caused direct damage to the wood frame walls, metal siding and roof structure above the origin of the fire. There was ensuing water damage to neighboring units from the fire department efforts to extinguish the fire which included multiple roof penetrations to keep the fire from spreading. In addition, there was smoke damage to all 10 of the tenant spaces with smoke and soot staining the walls and ceiling.[12] The SCN also states that: *"There is no salvage potential for the building components based upon the extent of the damage."*[13] Yet there is no evidence that AFCC ever investigated the potential coverage implications if both locations were considered a constructive total loss.

On 08/26/2018, the claim file noted that the insured was considering demolishing the building and constructing a carwash. It also noted that the insured was considering rebuilding the smog shop. Once again, the adjuster noted the need to discuss a global settlement. However, there is no evidence in the claim file that AFCC did the investigation necessary to propose a global settlement.

There are numerous references in the claim file regarding the insured considering the option to demolish the structure(s) and build an automatic car wash. AFCC never investigated how this would impact settlement of the claim(s). It never investigated whether an automatic car wash would or would not qualify as a similar occupancy. Incredibly, AFCC waited until after the structure(s) had been demolished to declare that a carwash was not a similar occupancy. It should be pointed out that there was an auto repair shop at this location and AFCC never investigated as to whether or not this could be considered a similar occupancy. In addition, there is an exception if a similar occupancy is not permitted by zoning or land use ordinance or law.[14] There are numerous references in the claim file regarding the difficulty of getting permits to rebuild the structure(s) as they existed before the loss.[15] AFCC knew about this but never investigated before arbitrarily deciding that a carwash was an unacceptable occupancy.

---

[11] CF0000023  Serious Case Notice 23373704

[12] CF000306

[13] CF00037

[14] POL000202 This coverage applies only if the restored or remodeled property is intended for similar occupancy as the current property, unless such occupancy is not permitted by zoning or land use ordinance or law.

[15] CN000036  James Preston (09/17/2018). *"We have learned that due to the amount of code requirements and issues from the city, the insured may be looking to completely demolish the building and rebuild with a car wash, we may inquire with the PA if they are looking for a global settlement to bring the claim to resolution."*

**LOPEZ 015805**

The policy included endorsement CP 88 40 12 12 PROPERTY EXTENSION PLUS FOR LESSORS. This endorsement included Section 15. q. Business Income and Extra Expense. AFCC never investigated whether or not the Extra Expense provision applied to this loss.[16] The policy includes endorsement CP 72 97 04 02 EQUIPMENT BREAKDOWN   ENHANCEMENT which includes Section 9, Demolition and ICC (Increased Cost of Construction). AFCC never investigated whether or not this provision applied to this loss. [17]

The policy includes CP 04 49 12 05 CALIFORNIA CHANGES – REPLACEMENT COST. AFCC never investigated how this endorsement differentiated between an Agreed Value policy and an "open policy." [18]


## AFCC MISREPRESENTED POLICY PROVISIONS.

On January 18, 2018, Brett Day sent a letter to Rolf Eidbo as a confirmation of coverage regarding claims number 23372704. This letter confirms that as part of the AFCC investigaton they had reviewed a copy of the American Fire and Casualty Company policy no. BKA 55979842. It stated that this letter reflects a general view of the available limits of coverage as potentially being involved in this claim at this time. Yet, the letter

---

CN000041 Brett Day (07/24/2018) *"PA has stated that the building department is asking for a large amount of code improvements to the building and parking lot. Many of the code improvements are to undamaged areas of the building. The cost of these improvements may be too much for the insured to accept."*

[16] POOL000197   Extra Expense means necessary expenses you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property.
Coverage pertains to expenses which are incurred to:
(a) Avoid or minimize the "suspension" of business and to continue "operations":
1. At the described premises; or
2. At replacement premises or at temporary locations, including:
(a) Relocation expenses; or
(b) Costs to equip and operate the replacement or temporary locations.
(b) Minimize the "suspension" of business if you cannot continue "operations."
(c) To repair or replace any property;
(d) To research, replace or restore the lost information on damaged valuable papers and Records.

[17] POL000180 If a building that is Covered Property is damaged by a loss covered by this endorsement and the loss is increased by enforcement of any ordinance or law in force at the time of the
**Equipment Breakdown** that regulates the construction or repair of buildings, or establishes zoning or land use requirements, we will pay for the following additional costs to comply with such ordinance **A.** An "open policy" is a policy under which the value of Covered Property is not fixed at policy inception but is determined at the time of loss in accordance with policy provisions on valuation. The term "open policy" does not apply to Covered Property that is subject to an Agreed Value clause or similar clause that establishes an agreed value prior to loss, unless such clause has expired.

[18] POL000159

**LOPEZ 015806**

provided no actual policy wording. The letter stated the policy limits were $2,383,656, with Replacement Cost Settlement and at Agreed Value. It failed to note that the loss involved two separate locations on the policy with separate limits of liability. It made no reference to limitations regarding law and ordinance. As pointed out previously, the claim notes show that Brett Day was aware that the insured had owned the building for approximately 40 years and had made additions and modifications over that time.[19] It indisputable that there was a strong potential for law and ordinance issue(s). The failure to provide the appropriate wording and the failure to provide a Reservation of Rights letter results in a material misrepresentation of the policy provisions. Brett Day had done a coverage analysis on 01/18/2018 disclosing that he knew endorsements CP0010 CP1030 CP0030 and CP8840 were applicable forms on the policy, but he never disclosed that to the insured and his letter makes no mention of these endorsements, some of which were used later to improperly support a partial claim denial.[20]

AFCC never sent a reservation of right letter, identifying the policy provisions that could potentially apply to this loss. The only letter in the claim file that includes specific policy language fails to respond to the obvious fact that this loss covered two locations, with separate limits of liability. It only quotes part of CP 88 40 12 12 PROPERTY EXTENSION PLUS FOR LESSORS ENDORSEMENT, Section F. c (i) and failed to disclose sections F. A. and B., which are not impacted by the limitation of coverage for a building with a similar occupancy.    That letter also represents a material misrepresentation of policy provisions.

## AFCC DELIBERATE DELAYED INVESTIGATION OF THE CLAIM TO JUSTIFY ITS UNSUSTAINABLE PARTIAL DENIAL OF COVERAGE.

The claim file documents that AFCC knew that the INSD was considering demolishing the building and constructing a car wash. Yet it never disclosed to the insured that AFCC considered this a material change that would justify a partial denial of coverage. This shows intent to delay the investigation in order to justify an unsustainable and incorrect partial denial of coverage. The email alerting the insured to the CP 88 40 12 12 endorsement was only sent on July 9, 2020, after the structure had already been demolished.[21] Brett Day had been informed on June 8, 2020, that the building(s) had been completely demolished.[22] There are numerous references in the claim file regarding the INSD's consideration of demolishing the entire structure and constructing a car wash.

---

[19] CN000064  James Preston 1/16/2018.  *"Insured has owned building for approx. 40 years, making additions and modifications over that time."*

[20] CN000063

[21] CF001407

[22] CF001408

LOPEZ 015807

## AFCC NEVER PROVIDED THE INSURED WITH A RESERVATION OF RIGHTS LETTER.

There are numerous references in the Commercial Insurance Claims/Property Claim Quality Standards that document the requirement for issuing a Reservation of Rights letter. This is required when there is recognition of a potential coverage issue.[23] AFCC had numerous opportunities to include a ROR and never provided the insured with the policy wording used to justify its adjusting decisions until a copy of the policy was sent, via email, to the PA on March 16, 2020. That email acknowledges that Mr. Lopez was waiting to make the final decision regarding demolishing the building after he knew what insurance proceeds were available.[24] In addition, that email states "until our recent meeting of March 2, 2020, we were unaware of Mr. Lopez's intent for the damaged building. Yet the claim file notes show that AFCC knew that the insured was considering demolishing the existing building and constructing a carwash in October of 2018.[25]

## AFCC FORCED THE INSURED TO FILE A LAWSUIT TO OBTAIN BENEFITS DUE AND OWNING UNDER THE POLICY.

AFCC's failure to conduct a prompt and thorough investigation, its deliberate misrepresentation of policy provisions and the intentional delay of its investigation resulted in circumstances where the insured was forced to file a lawsuit in order to recover damages due and owing. AFCC knew that the claim was not progressing, and manager review noted that a more aggressive claim handling approach was required.[26]

---

[23] CM0000001  "Upon recognition of a potential coverage issue: ...A reservation of rights letter (ROR) or non-waiver should be utilized as appropriate.  Follow up letters should also include ROR leanguage.

[24] Lopez 015797. Letter from Brett Day to Rolf Eido  *"Please find attached a copy of the requested policy documents. American Fire and Casualty Company has not changed our position as the CODE coverage. Until our recent meeting of March 4, 2020 we were unaware of Mr. Lopez's intent for the damaged building. We were working on the assumption Mr. Lopez was going to repair the existing structure. We were aware of the potential of tearing down the building and constructing a carwash; however, you previously stated Mr. Lopez was going to make the decision after knowing what the insurance proceeds were."*

[25] CN0000033  Janine Mills (10/15/2018) *"However, we have learned that due to code issues, insured may demolish existing building and rebuild as a carwash so unsure why remediation would be required if building will be demo'd."*

[26] CN0000047 Phillip White (6/7/2018)  *"Adjuster and examining status noted. Examiner working adjuster to move claim forward. Based on review of the status to date, a more aggressive claims handling approach is needed to control the POR. It appears that the insured and PA have been slow to move forward with securing plans to begin the repairs. Also, there are some issues regarding some previously non-permitted repairs that need to be addressed. This has resulted in an idle period from a BI standpoint and may impact the overall BI recovery. Adjuster may need to consider bringing in an engineer to secure plans. Additionally, a letter needs to be sent to the PA addressing the continued delays and how it will impact the evaluation of the BI on this claim."*

**LOPEZ 015808**

There were numerous references to the need for a global settlement, but there is no evidence in the file that a global settlement was ever discussed with the insured.

## SUMMARY

AFCC failed to conduct a proper investigation. It misrepresented material policy provisions. It delayed investigating the claim even though the claim file showed numerous references regarding the need to take affirmative action to get this claim resolved.[27] AFCC never provided the insured a ROR letter, even though this is specifically required and even though the need for a ROR was documented in the claim file.[28] Even after AFCC knew there was a serious coverage issue, and knew an ROR was necessary, one was never provided to the insured. Instead, AFCC sent an email, after the building had already been demolished, providing a redacted version of the endorsment wording.[29] The timing of that email, after the adjuster had been informed that the building had been demolished, raises serious questions about the intent of AFCC to handle this claim in good faith.

---

[27] CN0000047

[28] CN0000009 Raquel Ortega (3/11/2020)  "please review policy conditions for ICC and establish coverage and action plan to address. Consider ROR.

[29] CF001407 email from Brett Day to Rol Eidbo.

**LOPEZ 015809**

This is my Preliminary Opinion. I reserve the right to amend or supplement my opinions as new facts and/or documentation becomes available.


_____
Terry D. McNeil, MBA

_____
2/18/2022
Date

LOPEZ 015810

## EXHIBIT 1

## DOCUMENTS REVIEWED

CF00001-CF002749
CF001095-CF001102
CF001363-CF001369
CF001385-CF001390
CF001404=CF001411
CF001372-CF00373
CM000001-CM000306
CN000001-CN000074
DOC 1
DOC 10
ROLD EIDBO DEPO
LOPEZ 00219-000230
LOPEZ 00231-000305
LOPEZ 00306-000378
LOPEZ 000379-000389
LOPEZ 000550-000558
LOPEZ 002012-007120
LOPEZ 00701-008152
LOPEZ 0008153-008162
LOPEZ 008163-008404
LOPEZ 008465
LOPEZ 008466-008477
LOPEZ 008539-008695
LOPEZ 015797-014954
Lopez, Jose COND 2021-10-12
NUI R Presponces to American Fire
POL000001-POL000223 CERTIFIED AMERICAN
FIRE POLICY
RFA RESPONSES TO P RFA SET 1
RFP - P RESPONSES TO AMERICAN FIRE
RFP P RESPONSES TO D - SET 2
RFP - P RESPONSES TO AMERICAN FIRE
RFP - RESPONSES TO P ROGS SET ONE
ROGS-RESPONSES TO P PROGS SET 1
TRANSCRIPT BRETT_DAY
TRANSCRIPT LOPEZS, JOSE

**LOPEZ 015811**

## EXHIBIT 2
## DEPOSITION TESTIMONY
### (Last four years)

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE. HOME DEPOT U.S.A. Plaintiff, v. COLUMBIA, CALIFORNIA VENTURE, INDUSTRIAL, LLC, a Delaware Limited Liability Company, LINCOLN PROPERTY COMPANY, a Texas Corporation and DOES 1-20. Defendants. (Retained by Travelers Insurance)

ARIZONA SUPERIOR COURT, PIMA COUNTY. Case No. C20194441.ACS INTERNATIONAL PRODUCTS, LP, an Arizona limited partnership, Plaintiff, STATE AUTOMOBILE INSURANCE COMPAN, an Ohio corporation, Defendant. (Retained by Plaintiff)

AMERICAN ARBITRATION ASSOCIATION, COMMERCIAL ARBITRATION TRIBUNAL No. 01-20-0000-2838 ANDREW SMITH COMPANY, LLC, Claimant, v. DESERT PREMIUM FARMS, LLC, respondent. (Retained by Desert Premium Farms)

SUPERIOR COURT OF THE STATE OF ARIZONA, COUNTY OF MARICOPA, cv 2018-007556. PAUL NELSON AND CYNTHIA NELSON, Plaintiff v. ARMED FORCES INSURANCE EXCHANGE, TITAL RESTORATION OF ARIZONA, Defendant. (Retained by Plaintiff),

SUPERIOR COURT FOR THE STATE OF ARIZONA, COUNTY OF PINAL, Case No. S-1100-cv-0201900405. DAVID WOODSON AND PATRICIA KARDOS, Plaintiffs, v HOMESITE INDEMNITY COMPANY, WELLS FARGO BANK, N.A. INSURANCE SERVICES, ET AL Defendants. (Retained by plaintiff)

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF MONO Case No.: CV 140127. DALE ULMAN AND DIANE VOLPICELLI as co-trustees of the ULMAN FAMILY WEALTH REPLACEMENT TRUST, Plaintiffs, v. THE TIMBERS AT SIERRA STAR OWNER'S ASSOCIATION. INC., a California corporation et al. (Retained by Liberty Mutual)

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION. Case No 2:19-cv-04163 VAP (ASX) DAVID BLACK, Plaintiff v. STATE FARM GENERAL INSURANCE COMPANY, INC. (Retained by Plaintiff)

SUPERIOR COURT OF THE STATE OF CALIFORNIA, SACRAMENTO COUNTY Case No. 34-2017-00223969 KIMBERLY WIETSMA, and individual, RENEE BRADFORD, an individual, and CINDY NUGENT, an individiual, Plaintiffs, vs. FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN, a corporation, FARMERS INSURANCE EXCHANGE, an insurance exchange. (Retained by Farmers)

LOPEZ 015812

## EXHIBIT 3
## CURRICULUM VITAE

**TERRY D. McNEIL**
110 Blue Ravine Rd., Suite 105
Folsom, CA 95630-6803
Phone:  916-983-2561  Fax:  916-983-2573
California Insurance License:  0F24586
e-mail:  terry@tdmins.com
www.tdmins.com

**EXPERIENCE**

06/04 to Current            T. D. McNeil Insurance Services

**PRESIDENT**

Full-service insurance agency offering all lines of coverage, including personal lines, commercial lines, life and health

Also offering Risk Management consulting services

10/88 to 06/04            ABM Industries, Inc.
San Francisco, CA  94505

**VICE PRESIDENT & DIRECTOR OF INSURANCE SERVICES**

With over 70,000 employees and $2.2 billion in revenue, ABM Industries, Inc., is the largest building services' contractor listed on the New York Stock Exchange. Responsible for managing $100 million corporate risk management program.   Included self-insured workers' compensation program.  Also managed, self-insured, and self-administered general liability program, including management of tort litigation claims nationwide.

**LOPEZ 015813**

12/86 to 10/88

Empire Agency Corporation
Larkspur, CA  94939

**VICE PRESIDENT/MANAGER**

Agency is subsidiary of Fleming Co.  Chief Operating Officer responsible for all operations, including sales, claims, loss control and underwriting for Western Region covering nine states

08/77 to 10/86

Spartan Stores, Inc.
Grand Rapids, MI  46508

**DIRECTOR OF INSURANCE**

Responsible for Corporate Risk Management program. Included administration of self-insurance programs and employee benefit programs.  Authorized to set up two new subsidiaries, the Shield Insurance Agency and the Spartan Insurance Company to provide insurance coverage for independent grocery store owners/customers of Spartan Stores, Inc.

06/79 to 10/86

Shield Insurance Agency, Inc.
Spartan Insurance Company, LTD
Grand Rapids, MI  49508

**VICE PRESIDENT/MANAGER**

Developed business plan and managed formation of both Shield Insurance Agency and Spartan Insurance Company, LTD.  Vice President and Chief Operating Officer for both companies.  Responsible for sales, underwriting, claims, loss control and related functions.

07/74 to 08/77

Michigan Mutual Insurance Co.
Grand Rapids, MI

**REGIONAL UNDERWRITING SUPERVISOR**

Handled major commercial accounts.  Promoted to supervisor for both personal and commercial lines underwriting operations.

**LOPEZ 015814**

01/72 to 07/74                Sentry Insurance
                              Stevens Point, WI

                              **UNDERWRITER**

                              Initially trained as personal lines underwriter.
                              Promoted to commercial lines underwriter after extensive
                              commercial lines training program.

02/67 to 12/70                United States Air Force

                              **VIETNAMESE LINGUIST**

                              Worked as Vietnamese Linguist in Air Force Security
                              Service.  Served two tours active combat in Southeast Asia.
                              Job classifications as voice intercept operator. Position
                              required high security clearance and involved an extensive
                              personal background investigation.

**EDUCATION**
1975 to 1977                  Seidman Graduate School of Business
                              Grand Valley State University
                              Allendale, Michigan

                              MBA Management – Graduated with High Honors

1971 to 1973                  University of Wisconsin
                              Stevens Point, WI
                              BS Business Administration & Economics
                              Graduated with Honors

**ORGANIZATIONS**            Served on the following:

                              CA Coalition for Workers' Compensation Policy Advisory
                              Committee
                              CA Dept. of Insurance Workers' Compensation Fraud Task
                              Force Committee
                              CNA Client Advisory Council
                              RSKCo Client Advisory Council
                              GAB Client Advisory Council
                              Corporate Systems President's Advisory Council
                              Willis Risk Management Panel
                              RIMS Legislative Chairman

**LOPEZ 015815**